# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JESSE R. ENJAIAN,

      Plaintiff,

v.                                                    Case No. 14-cv-13297

MARK S. SCHLISSEL, *et al.*,

      Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS AND SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SANCTIONS

Pending before the court are a Motion for Judgment on the Pleadings and Summary Judgment, filed by Defendants on February 6, 2015 (Dkt. # 29) and a Motion for Sanctions, filed by Plaintiff on March 9, 2015 (Dkt. # 32). Having reviewed the briefs, the court concludes a hearing is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will grant Defendants' motion and deny Plaintiff's motion.

## BACKGROUND

### A. Enjaian and Schomp[1]

Jesse Enjaian matriculated at the University of Michigan Law School in 2010, joining the Class of 2013. Renée Schomp was Enjaian's classmate, who shared an identical set of classes during their first year. (Dkt. # 13, Pg. ID 167–68.) On more than one occasion in early 2011, Enjaian invited Schomp for "coffee or tea" or "lunch or coffee," but on each occasion, Schomp declined. (Dkt. # 30-7, Pg. ID 869–70.)

_____

[1]This factual narrative is taken from Enjaian's First Amended Complaint and his Opposition to the instant motion, together with attached exhibits.

According to Enjaian, although initially a friend, by their second year of school, something changed; "Schomp began to strongly dislike [him] for unexplained reasons." (Dkt. # 13, Pg. ID 168.)  She allegedly began defaming Enjaian to other students, including mutual friends.  (*Id.*)

On November 17, 2011, Schomp reported to Defendant Bernard Mundt, an Officer with the University of Michigan Police Department, that she had been receiving emails and Facebook Messages from Enjaian over the course of the previous year. (Dkt. # 13-2, Pg. ID 212.)  The "communications . . . made her increasingly uncomfortable and worried."[2]  (*Id.*)

On November 21, 2011, Enjaian exchanged a series of text messages to Carrie Cushing, a friend of Schomp's, generally insisting that he was entitled to an apology from Schomp.  (Dkt. # 30-8, Pg. ID 871–74.)  In one of the text messages, he stated that he "h[o]pe[d] [Schomp] likes deep dark pits of depression because [he's] a petty bastard P [sic][3]."  (*Id.* at 873.)  After Cushing cautioned him that he shouldn't do anything, Enjaian responded: "Not that serious.  Just enough to make her feel crappy -D [sic]".  (*Id.*).  Cushing shared these text messages with Schomp.  (Dkt. # 13, Pg. ID 169.)

At some point the same evening or early the next morning, Enjaian sent a Facebook message to Schomp expressing that he "fe[lt] entitled to an answer for why [she] behaved so negatively last year."  (Dkt. # 30-7, Pg. ID 870.)  In response, Schomp replied: "Jesse, I do not with to have any further contact with you whatsoever.  Do not

---

[2]Enjaian questions whether this was reported by Schomp to Mundt, or whether it was a conclusion drawn by Mundt.

[3]Enjaian insists the inclusion of the "P" is essential, because it is an emoticon that materially affects the tone of the sentence.

send me any other messages via email, facebook, or text message. Do not call me, speak to me in person, or interact with me in any other way, either directly or indirectly." (*Id.*) Cushing also warned Enjaian that Schomp would go to the police if he continued to bother her. (Dkt. # 13, Pg. ID 169.) Enjaian stated that he would cease communication with Schomp, in order to avoid a harassment claim. (Dkt. # 30-8, Pg. ID 875–76.)

### B. LawOpen and LawClosed

The Law School administered a listserve called LawOpen, which allows law students to send messages to all other students at the law school. (*Id.* at 170.) On December 9, 2011, Enjaian created what he calls a "parody of a law school administered student group," called "LawClosed." (*Id.*) Apparently, Enjaian had been restricted from using LawOpen by the school's e-mail account manager for sending inappropriate messages to the student body using LawOpen.[4] (Dkt. # 30-3, Pg. ID 852, 856.) Enjaian configured LawClosed to operate exactly like LawOpen,[5] meaning it was intended to include all Michigan Law students, including Schomp.[6] (Dkt. # 13, Pg. ID 170.) Enjaian later told Mundt that he chose names by selecting people affiliated with the law school's Facebook account, and that he knowingly included Schomp. (Dkt. # 30-3, Pg. ID 856.)

---

[4] *See* Dkt. # 30-10, Pg. ID 882. The record is not clear as to whether Mundt knew the nature of these messages at the time he swore out the affidavit, so they are not considered for the purpose of the motion.

[5] LawClosed included 973 members, while LawOpen included approximately 1200. (Dkt. # 30-10, Pg. ID 888.) Additionally there were typographical errors in some of the e-mail addresses, which led Schomp to believe the names were hand typed. (*Id.*)

[6] The court notes that within the first half hour of Enjaian's messages, at least two of his classmates inquired as to how they may stop receiving e-mails from this list. (Dkt. # 13-5, Pg. ID 218, 220.)

The same day he created it, Enjaian sent two messages using LawClosed.  One was to introduce students to LawClosed and the other was to attempt to sell an old casebook.  (Dkt. # 13, Pg. ID 170.)   The first email included a hyperlink to a news article reporting the death of a woman that had been employed at Skadden Arps, a large law firm where Schomp had previously been employed[7].  (Dkt. # 13-2, Pg. ID 212; Dkt. # 13-4, Pg. ID 217.)  Enjaian knew at the time he sent the messages that Schomp received the emails, and that Schomp had recently requested that he not contact her. (Dkt. # 30-3, Pg. ID 856–57.)

After receiving the emails, Schomp reported back to Mundt, showing him the text messages between Enjaian and Cushing as well the two emails sent to LawClosed. (Dkt. # 13-2, Pg. ID 212.)  She told Mundt that she thought the article links were directed at her as an act of intimidation and that she felt "frightened and harassed by receiving two e-mail messages from Enjaian after she informed him to have no further contact with her.  (*Id.*)  Schomp also initiated a complaint with the University of Michigan Office of Student Conflict Resolution.  (Dkt. # 13, Pg. ID 171.)  The next day, on December 10, 2011, at the request of Dean of Students David Baum, the LawClosed list was disabled.  (Dkt. # 13, Pg. ID 176–77.)

## C. The Search

---

[7]*See also* Dkt. # 30-5, Pg. ID 862–66 (reproducing the article, which was published on November 15, 2011, over three weeks before being included in Enjaian's email).  Enjaian contends he was not aware of Schomp's employment at Skadden when he sent the email.  (Dkt. # 30, Pg. ID 831.)

The same day that Schomp complained to Mundt, December 9, 2011, Mundt signed an affidavit for a search warrant. (Dkt. #13-2, Pg. ID 211–13.) The affidavit was reviewed by Blaine Lowesworth from the Washtenaw County Prosecutor's Office and signed the same evening by Magistrate A. Thomas Truesdale of Michigan Judicial District Fourteen-A. (*Id.* at 210–11.) The warrant specified "[a]ll computer equipment, information storage devices and cell phones as well as records or documents that are located at the above and there [sic] contents." (*Id.* at 214.) The search warrant also allowed officers to locate and seize passwords or encryption codes necessary to access the data located on the computer. (*Id.* at 214.)

Mundt, along with two other officers, executed the search warrant that night, and seized Enjaian's laptop computer, cell phone, USB keychain drives, a USB drive, and an iPod Nano. (Dkt. # 30-3, Pg. ID 855.) During the search, Enjaian admitted that he sent the messages and that he added Schomp to the list. (*Id.* at 856.) When Mundt asked Enjaian why he included Schomp despite receiving a "no contact order," Enjaian responded that "[i]t didn't cross [his] mind." (*Id.*) Enjaian provided his computer login information to Mundt. (*Id.*)

Defendant Dorta conducted the search of Enjaian's computer. (Dkt. # 13-25, Pg. ID 289.) Dorta discovered that part of Enjaian's computer was encrypted and that his cell phone was password protected. (*Id.*) Dorta attempted to obtain the passwords from Enjaian, who refused to provide them. (*Id.*) Dorta attempted a "simple dictionary brute force attack" on the encrypted files, which took several months and was ultimately unsuccessful. (*Id.*; *see also* Dkt. # 13-30, Pg. ID 295–97.) Dorta was, however, able to circumvent the cell phone password on September 25, 2012. (*Id.* at 931, 934–35.)

Dorta was able to extract the Facebook messages and text messages from the cell phone.

### D. Refusal to Prosecute

Dorta prepared a warrant request packet seeking the charges of Stalking, Posting, and Malicious Annoyance by Writing against Enjaian. (*Id.*) On January 3, 2013, the Washtenaw County Prosecuting Attorney declined to prosecute. (Dkt. # 30-4, Pg. ID 859.) In the denial form, Assistant Prosecuting Attorney Susan Longsworth stated that Schomp's "assertion that [the link to the article about the death of the Skadden Associate] was a veiled threat of some sort because [Schomp] once worked for the same large law firm but in a different office cannot be proved beyond a reasonable doubt." (*Id.*) Shortly thereafter, Enjaian's property was returned to him. (Dkt. # 13, Pg. ID 171.)

### E. Procedural History

This is Enjaian's third lawsuit aimed at seeking redress for an investigation precipitated by a Schomp's accusation of stalking. Enjaian first sued the University of Michigan Department of Public Safety, along with Officers Mundt and Dorta in the Northern District of California. That court dismissed Enjaian's damages claim against the organizational defendant and transferred the case to this district pursuant to 28 U.S.C. § 1404(a). *Enjaian v. Univ. of Michigan Depot of Pub. Safety*, No. 12-3924, 2012 WL 4717879, at *2 (N.D. Cal. Oct. 2, 2012) (*Enjaian I*). Two days later, Enjaian voluntarily dismissed that action before the transfer was effectuated. (*Id.* Dkt. # 45).

Enjaian's second lawsuit was filed in this court on September 12, 2013 (No. 13-13907) (*Enjaian II*). Enjaian brought claims against the University of Michigan, Dorta, and Schomp. Relevant to this action, Enjaian claimed the his property was held for an

6

unreasonable 446 days and that the warrant authorizing the search and seizure lacked

a sufficient nexus with the Mundt affidavit because it authorized a search and seizure of

all computer data irrespective of its relation to the criminal investigation.  Enjaian also

sought a declaration that the warrant was unconstitutionally overboard.  The court

dismissed the action without prejudice as to Dorta, because he had not personally

sworn out the affidavit and it was not clear at the time that he had conducted the search

of Enjaian's confiscated property.  The court denied the declaratory judgment on the

basis of Eleventh Amendment sovereign immunity.

Enjaian supplemented the pleadings in his previous action.  Considerably.  The

complaint in *Enjaian* was four pages long and contained twenty paragraphs.  The First

Amended Complaint in the instant action is forty-four pages long and contains one

hundred fourteen paragraphs, together with seventeen exhibits spanning more than

ninety additional pages.  After Enjaian agreed to dismiss some of his claims, the

following four claims remain:

    1. Misrepresentation of affidavit in support of search warrant against Defendant
    Mundt,
    2. Restriction of protected speech against Defendant Mundt,
    3. Declaratory Judgment finding that the search warrant lacked probable cause, and
    4. Unreasonable execution of search warrant against Defendant Dorta, specifically
    relating to his search of Enjaian's cryptographic data.

Defendants now move for Summary Judgment and/or Judgment on the

Pleadings.  Enjaian moves for sanctions based on Defendants' Answer to the First

Amended Complaint.[8]

---

[8]Enjaian filed yet another lawsuit on April 20, 2015 against the University of Michigan, based on an investigation into whether Enjaian violated the University of Michigan Policy on Sexual Misconduct.  (No. 15-11438.)

7

## II. STANDARD

### A. Rule 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint's allegations.  Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  In order to survive a motion to dismiss, the complaint must allege "[f]actual allegations . . . enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Accordingly, the court views the complaint in the light most favorable to the plaintiff and takes all well-pleaded factual allegations as true.  *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009); *Carrier Corp. v. Outokumu Oyj*, 673 F.3d 430, 400 (6th Cir. 2012).  However, the court "need not accept as true legal conclusions or unwarranted factual inferences."  *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### B. Rule 12(c)

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed--but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  When ruling on a Rule 12(c) motion, the court must take as true "all well-pleaded material allegations of the pleadings of the opposing party," and "the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th

Cir. 2007) (quoting *So. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479

F.2d 478, 480 (6th Cir.1973)).  However, the court "need not accept as true legal

conclusions or unwarranted factual inferences." *Id.* at 581-82 (quoting *Mixon v. Ohio*,

193 F.3d 389, 400 (6th Cir.1999)).  The court is to grant a Rule 12(c) motion "when no

material issue of fact exists and the party making the motion is entitled to judgment as a

matter of law." *Id.* at 582 (quoting *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946

F.2d 1233, 1235 (6th Cir.1991)).  "There must be no material issue of fact that could

prevent judgment for the moving party." *Monroe Retail, Inc. v. RBS Citizens, N.A.*,

No.074263, 2009 WL 4749352, at *3 (6th Cir. Dec. 14, 2009).

## C. Rule 56

Under Federal Rule of Civil Procedure 56, summary judgment is proper when

"the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When

deciding a motion for summary judgment, the court "is not to 'weigh the evidence and

determine the truth of the matter but to determine whether there is a genuine issue for

trial.'" *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003) (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  "The central issue is 'whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it

is so one-sided that one party must prevail as a matter of law.'" *Id.* at 497 (quoting

*Anderson*, 477 U.S. at 251-52).  "The judge's inquiry, therefore, unavoidably asks

whether reasonable jurors could find by a preponderance of the evidence that the

[movant] is entitled to a verdict . . . ." *Anderson*, 477 U.S. at 252.

The party seeking summary judgment has the initial burden of showing the

absence of a genuine dispute as to a material fact. *Celotex Corp. v. Catrett*, 477 U.S.

9

317, 323 (1986).  The burden then shifts to the nonmovant, who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson*, 477 U.S. at 256.  It is not enough for the nonmovant to "simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, the nonmovant must sufficiently allege a fact that, if proven, "would have [the] effect of establishing or refuting one of essential elements of a cause of action or defense asserted by the parties."  *Midwest Media Prop. L.L.C. v. Symmes Twp., Ohio*, 503 F.3d 456, 469 (6th Cir. 2007) (alteration in original) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)) (internal quotation marks omitted).

Both parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  Alternatively, either party may carry its burden by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  *Id.* 56(c)(1)(B).  "The court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan*, 342 F.3d at 497 (citing *Matsushita*, 475 U.S. at 587).

### D. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

10

(1982)). To defeat Defendants' claim of qualified immunity, then, Plaintiff must demonstrate not only that the facts shown "make out a violation of a constitutional right," but also that "the right at issue was 'clearly established' at the time of [Defendants'] alleged misconduct."  *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

### III. DISCUSSION

### A. Mundt

### 1. Falsity of Affidavit

Enjaian's first cause of action alleges that Mundt's affidavit in support of the search warrant was maliciously, intentionally, or recklessly false.  Specifically, Enjaian argues that ¶ D of the affidavit, which states that Schomp provided Mundt with the text messages between Enjaian and Cushing on December 9, 2011, misleadingly implies that those text messages were sent *after* Schomp told Enjaian not to contact him. Further, Enjaian points to Mundt's omission of any mention of the nature of the second email, an offer to sell a textbook, as well as a text message to Cushing where Enjaian expressed that he would cease communicating with Schomp.  Finally, Enjaian claims that the omission of an "emoji"[9] would have led the reader to understand that he was merely "deeply unhappy . . . rather than sadistically bloodthirsty for revenge."  (Dkt. #30, Pg. ID 828–29.)

---

[9]Enjaian appears to conflate an "emoji," which is a pictograph included in a text message, with an "emoticon," which is a representation of a facial expression created using standard ASCII characters.  The omitted portions of the text messages appear to be emoticons.

The validity of a search warrant is determined at the time the affidavit was presented to the magistrate, and any information subsequently learned is irrelevant. *See, e.g.*, *United States v. Noel*, 938 F.2d 685, 687 (6th Cir. 1991).  Review of a warrant is limited to the "four corners" of the affidavit. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006).  An affidavit must contain "particularized facts," *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006), and a "nexus between the place to be searched and the evidence sought," *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004).  "Probable cause . . . means facts and circumstances . . . that are sufficient to warrant a prudent person, one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Probable cause exists "when there is a 'fair probability' . . . that contraband or evidence of a crime will be found in a particular place." *United States v. Helton*, 314 F.3d 812, 859 (6th Cir. 2003). But affidavits upon which probable cause is founded "must provide the magistrate with a substantial basis for determining the existence of probable cause." *Illinois v. Gates*, 462 U.S. 213, 239 (1983).  When reviewing affidavits based on hearsay from an informant, the court must consider the informant's reliability, veracity, and basis of knowledge during the totality-of-the-circumstances review. *Helton*, 314 F.3d at 820.

Enjaian's professed willingness to cease communicating with Schomp is belied by his *manual* inclusion of Schomp's email address in the LawClosed list he created, a mere two weeks after she unambiguously expressed a desire not to hear from him.  It was eminently reasonable for Mundt to conclude that LawClosed's existence was pretextual.  To be sure, it is plausible, as Enjaian suggests, that he simply created the list to give the student body an alternative to LawOpen, albeit one that nobody asked for

12

and from which a least some students immediately wanted to disassociate themselves. However, Enjaian's actual motivation has no bearing on whether Schomp's perception of the list could differ from its stated purpose. A reasonable officer could believe that Schomp, given the very recent history including Enjaian's stated desire to make her "feel crappy," was upset by the emails.

It is true that the affidavit is less than clear in conveying when the text messages between Enjaian and Cushing were exchanged. However, the timing of the text messages is not critical to establishing probable cause. The text messages simply show that Enjaian may have had an intent to harass Schomp and can explain why Schomp would be upset and frightened by otherwise innocuous looking transmissions.[10] The fact that these messages were exchanged prior to Schomp's no-contact request does not change the fact that the emails to LawClosed, and by extension Schomp, were sent *after* the no contact request. Those communications constituted the two contacts that provided Mundt the basis for seeking a search warrant. Had the text messages been sent months, rather than weeks, before the email, the timing would have been more important. Furthermore, if Enjaian had not brought upon himself the ban from using LawOpen, his emails may have been subject to much less attention. But the undisputed facts[11] are capable of showing a conscious effort to include Schomp in a mass email list, just two weeks after she unambiguously said not to contact her in any

---

[10] The inclusion of the emoticon, a "-D," which appears to be a wide open-mouth smile, would not help Enjaian. It does not materially alter the meaning of the text message.

[11] The only facts in dispute are Enjaian's intentions when establishing LawClosed and Mundt's mental state when drafting his affidavit. Qualified immunity is an objective inquiry, so neither is relevant for the purpose of determining the motion. *See Pearson*, 555 U.S. at 244.

way.  In light of that, Mundt could reasonably believe his affidavit provided probable cause for a search warrant.  A prosecutor and judge agreed.  Dorta, despite a mostly unsuccessful search also agreed and referred the matter for prosecution.  Although prosecutors ultimately declined to pursue charges, it cannot then be said that the affidavit was unreasonable even if the collection of facts presented and accepted for the search warrant was essentially identical to those rejected in reviewing the proposed arrest warrant.  Enjaian cannot use a post hoc exercise of prosecutorial discretion to attack an ex ante decision to investigate a complaint of potential stalking.

Enjaian argues that Schomp's report was "patently lacking" and Mundt's "reliance upon her was made with actual malice."  (Dkt. # 30, Pg. ID 829.)  The court disagrees. A reasonable officer could have concluded that Schomp's reaction to Enjaian's emails was genuine and it cannot be said using her statements in the affidavit constituted malice, or even recklessness.  Qualified immunity is unavailable "'if it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.'" *Armstrong v. City of Melvindale*, 432 F.3d 695, 700-01 (6th Cir. 2006) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Here, a reasonably competent officer could have concluded that the facts justified seeking a search warrant.  As such, Mundt is entitled to qualified immunity.  The first cause of action is dismissed with prejudice pursuant to Rule 12(c).

## 2. First Amendment

Enjaian's second cause of action asserts that Mundt used a valid exercise of Enjaian's First Amendment rights, namely the emails sent to LawClosed, as support for probable cause of stalking.  Enjaian argues that the search was an element of a

14

conspiracy to shut down LawClosed to silence his views objecting to the "Big Law" system.

To prevail on a claim of First Amendment Retaliation, it must be shown that: 1) the conduct was protected, 2) an adverse action was taken against that conduct that would deter a person of ordinary firmness to engage in that conduct, and 3) there is a causal connection between the conduct and the adverse action.  *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999).

Assuming, *arguendo*, that the emails were protected and that the search constituted an adverse action, Enjaian's claim fails at the third step.  As pleaded, Mundt's investigation was causally connected to Schomp's complaint, and there is nothing beyond conclusory speculation that Mundt was acting at the behest of the Law School's desire to restrain Enjaian's dissent regarding the "BigLaw career path."  The notion that the search warrant was obtained as a pretext to chill Enjaian's speech is not plausible, especially in light of the parallel criminal and academic investigations that followed.  Furthermore, the decision to shut down LawClosed was made by the Dean of Students and there is no indication that it had anything to do with the criminal investigation.  In fact, there is no allegation that Mundt's affidavit in any way played a part in the independent decision to close down the list or that Mundt was even aware of the University's views on the content of Enjaian's email.  Absent a plausible causal connection between  the affidavit and the so-called conspiracy to silence Enjaian, the First Amended Complaint fails to state a claim for First Amendment retaliation and the second cause of action must be dismissed pursuant to Rule 12(b)(6).  *See Twombly*, 550 U.S. at 555.

**B. Declaratory Judgment**

15

Enjaian's third cause of action seeks a declaratory judgment finding that the search warrant lacks probable cause and is overly broad.  However, the Eleventh Amendment prohibits declaratory judgments against a state and its officials based solely on past violations of law.  *Green v. Mansour*, 474 U.S. 64, 73 (1985).  Otherwise, the declaration "would be a partial 'end run'around [the Supreme Court's] decision in *Edelman v. Jordan*, 415 U.S. 651 (1974)", which shielded state defendants from liability for compensatory damages that must necessarily be made from public funds.  *Id.*

Enjaian responds that the search warrant is still active and could allow the officers to re-conduct the search of his person, and—if he chooses to move back from California to the same Ann Arbor address—to his residence.  He also argues that the declaration would provide him with a future cause of action, the exact sort of end run *Green* was worried about.

The contention that the search warrant could be executed again at any time is utterly without merit.  The search warrant was returned executed.  The case has been closed.  Authorities are without power to search on the same warrant over and over after a successful execution and Enjaian's fears to the contrary are unfounded conjecture.  It is simply implausible that Defendants' would seek to attempt to do so.  Enjaian does not—and cannot—distinguish *Green*, so his third cause of action must be dismissed with prejudice pursuant to Rule 12(b)(6).

## C. Dorta

Plaintiff's fourth cause of action maintains that Dorta's attempt to break into the encrypted containers on the seized laptop computer was an unreasonable execution of the search warrant.  As the court already discussed in *Enjaian II*, the Sixth Circuit has warned that "'hindsight is 20/20' and that 'so long as the computer search is limited to a

16

search for evidence explicitly authorized in the warrant, it is reasonable for the executing officers to open the various types of files located in the computer's hard drive in order to determine whether they contain such evidence.'" Opinion and Order Denying Plaintiff's Motion for Reconsideration, *Enjaian v. University of Michigan*, No, 13-13907, Dkt. # 41 (E.D. Mich. Aug. 28, 2014) (quoting *United States v. Richards*, 659 F.3d 527, 540–41 (6th Cir. 2011)).  The court also pointed out that "the Fourth Amendment does not protect against unreasonable delay in returning lawfully seized property to the owner. *Enjaian II*, No. 13-13907, 2014 WL 3662709, at *4 (E.D. Mich. July 14, 2014) (citing *Fox v. Van Oosterum*, 176 F.3d 342, 351–52 (6th Cir. 1999)).

In essence, Enjaian claims that a brute force attack on the Advanced Encryption Standard used to secure his data was a fool's errand; technically impossible—statistically improbable without several million years' computing time using modern computers—and thus "procedural foot dragging."[12]  Put another way, Enjaian asserts that because he can show that his encryption was unhackable, Dorta acted recklessly by trying to hack it anyway.

Enjaian fails to identify a clearly established right that was violated by Dorta's search.  The court's search revealed no such right exists.  In the Federal context, Federal Rule of Criminal Procedure 41(e)(2)(B) and its associated commentary specifically contemplates an extended search due to the existence of encryption.  The commentary accompanying the 2009 amendments noted that "the practical reality is that there is no basis for a "one size fits all" presumptive period.  A substantial amount of time can be involved in the forensic imaging and review of information. This is due to

---

[12]Enjaian devotes eight pages of his complaint to emphasize this point.  The court accepts the futility of the search for the purpose of this motion.

the sheer size of the storage capacity of media, difficulties created by encryption and booby traps, and the workload of the computer labs."  Fed. R. Crim. P. 41, cmt. (b)(5) (2009).  The commentary notes further caution that "[t]he rule does not prevent a judge from imposing a deadline for the return of the storage media or access to the electronically stored information at the time the warrant is issued. However, to arbitrarily set a presumptive time period for the return could result in frequent petitions to the court for additional time."  *Id.*

Enjaian sought the release of his property in *Enjaian I*.  He also would have been entitled to do so by a petition within the state court system.  His property was ultimately returned.  Without a judicial order to compel that return, Dorta was not required by any law clearly established in this circuit to do so any sooner than he did and was not required to refrain from a brute force attack on the encryption, or otherwise conform his search to any specific protocols.  As such, he is entitled to qualified immunity.  The fourth cause of action is dismissed with prejudice pursuant to Rule 12(c).

### D. Motion to Amend

Enjaian's cross motion to amend did not comply with Local Rule 15.1, which requires a party seeking to amend a pleading to attach the proposed amended pleading to the motion.  As such, the court must deny the cross motion.

### E. Sanctions

Enjaian seeks sanctions for Defendants' answers to ¶¶ 15, 18, 19, and 32 of the First Amended Complaint.  The answer to ¶ 15 states that "Defendants admit only that between November 21-23, 2011 Plaintiff sent text messages to [Cushing] threatening to harass and annoy Ms. Schomp in an effort to cause her mental and emotional distress." (Dkt. # 15, Pg. ID 405.)  Enjaian argues that the answer improperly speculated as to his

18

mental state.  However, Enjaian's own text messages as detailed in ¶ 15 of the FAC support this answer.  Enjaian specifically expressed an intent "to make [Schomp] feel crappy."  (Dkt. # 13, Pg. ID 168.)  To argue that Defendants response is anything other than a fair paraphrase of Enjaian's own words is without merit.  No speculation was required.

In ¶ 18, Defendants respond to Enjaian's explanation of the LawClosed list by issued a standards response that "Defendants lack sufficient knowledge or information to form a belief as to the purpose or operation of the "lawclosed@umich.edu" listserve." Dkt. # 15, Pg. ID 406.)   In ¶ 19, Defendants deny Enjaian's explanation that LawClosed was similar in purpose to LawOpen.[13]  (*Id.*)

Fresh off of arguing that Defendants improperly speculated about his mental state, Enjaian *now* insists that the refusal to speculate as to LawClosed's purpose is sanctionable.  On the contrary, Enjaian's purpose in establishing LawClosed is a central dispute in this case.  Enjaian argued it was an innocent list, meant to communicate with the student body.  Defendants' theory has always been that LawClosed was set up as a pretext to harass Schomp.  Enjaian's attempt to sanction Defendants for refusing to adopt his own explanation must be rejected.

Finally, ¶ 32 of the FAC includes an allegation that "No reasonable officer would've believed Schomp was truly frightened by either of these emails, but Mundt submitted his affirmation for the sole purpose of misleading the magistrate into misinterpreting his affiance as stating facts that I was willfully continuing on a course of conduct to communicate with Schomp. Mundt was also aware of the contents of each

_____

[13]In addition, the factual record contradicts Enjaian's assertion that LawOpen and LawClosed are "identical."  *See supra*, note 5.

email, prior to seeking the warrant, and that the second email was an offer to sell a book. Ex. 3 and 4. Mundt omitted a description of the second email for the sole purpose of misleading the magistrate into interpreting his affidavit as stating facts that both emails were directed towards Schomp, fulfilling the two contact requirement of the plain text of the stalking statute in Michigan." (Dkt. # 13, Pg. ID 174.) Defendants denied this allegation as untrue.

This is the central dispute in the case. Enjaian's expectation that Defendants should admit to disputed legal conclusions and speculation into Mundt's state of mind border on frivolous. The fact that there existed a sliver of undisputed truth—that Mundt was aware of the emails' contents prior to seeking the warrant—saves the motion from complete frivolousness, but does not render the response sanctionable.[14] The parties dispute whether Enjaian sent the motion to Defendants in compliance with Federal Rule of Civil Procedure 11(c)(2). Defendants argue they would have amended their answer had they properly received the proposed motion. The court need not resolve this dispute because the harm, if any, was de minimus. Enjaian argues that sanctions are mandatory, but Rule 11 (c)(1) explicitly states that "the court *may* impose an appropriate sanction . . . ." Fed. R. Civ. P. 11(c)(1). Enjaian cites to a brief filed by a party in an unrelated case to establish the proposition that sanctions are mandatory. (Dkt. # 34, Pg. ID 1158.) That brief itself provides no authority for the proposition that sanctions *must* be imposed. The motion for sanctions is denied.


**IV. CONCLUSION**

---

[14]"A party that intends in good faith to deny only part of an allegation must admit the part that is true and deny the rest." Fed. R. Civ. P. 8(b)(4)

Jesse Enjaian, after receiving a no contact demand from Renée Schomp and a warning that she would contact authorities if he contacted her again, created an email list, and manually included her as a member of that list.  He cannot be surprised that Schomp reacted by contacting Mundt.  Enjaian also cannot be surprised that Mundt took the complaint seriously and investigated, seeking a search warrant.  The investigation, which followed acceptable procedures, ultimately concluded in spite of Enjaian's refusal to cooperate.  No charges were filed.  This is an example of due process working as intended.  None of Enjaian's constitutional rights were violated.  Accordingly,

IT IS ORDERED that Defendant's Motion for Judgment on the Pleadings and Summary Judgment (Dkt. # 29) is GRANTED and the case is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Plaintiff's Cross Motion for Leave to Amend is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Sanctions (Dkt. # 32) is DENIED.


   s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  May 27, 2015



I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 27, 2015, by electronic and/or ordinary mail.

21

 s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522